IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAABAR VENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:18-CV-2185-MAB |
| ) | |
| LEE GREGSON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Kaabar Venson is a transgender inmate of the Illinois Department of Corrections ("IDOC"). She brought this civil rights action pursuant to 42 U.S.C. § 1983 against Menard officials who allegedly failed to protect her from an inmate attack on May 3, 2018 (Doc. 8, pp. 7-13). Her complaint was screened pursuant to 28 U.S.C. § 1915A, and she was permitted to proceed on Eighth Amendment claims against Defendants Nathan McCarthy, Corey Lauer, Bradley Laser (who are correctional officers), former Warden Jacqueline Lashbrook, and Nurse Lee Gregson (Doc. 11). Shortly thereafter, Plaintiff's request for counsel was granted and an attorney was recruited to represent her (Doc. 22). In February 2020, Plaintiff's counsel filed a twelve-count Second Amended Complaint to reflect additional allegations regarding the existing claims, to add new claims related to

her incarceration at Menard, and to add John Baldwin and four John Does as Defendants (Docs. 42, 43).[1]

The named Defendants filed a motion to dismiss Counts 8, 10, and 12 of the Second Amended Complaint (Docs. 65, 66). After the John Does were identified, they sought leave to join the motion to dismiss (Docs. 86, 107), which was granted. The motion to dismiss is therefore on behalf of all Defendants. For the reasons explained below, the motion is granted in part and denied in part.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g.*, *Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). The complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face,'" meaning the court can reasonably infer that the defendant is liable for the alleged misconduct. *Burger*, 942 F.3d at 374 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Camasta*, 761 F.3d at 736 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

---

[1] The John Does were later identified as Daniel Roskowski, Kevin Graves, Kyle Brumleve, and Joseph Goetz (Docs. 56, 72, 79).

## DISCUSSION

### A. Defendant John Baldwin

Plaintiff sued John Baldwin as the Director of the Illinois Department of Corrections, in his official capacity only (Doc. 43, ¶¶13, 54, 61, 102, 115, 121). Baldwin, however, is no longer the IDOC Director; Rob Jeffreys is currently the Acting Director. Pursuant to Federal Rule of Civil Procedure 25, a suit does not abate when a party in an official capacity ceases to hold office while the action is pending, but the officer's successor is automatically substituted as a party. FED. R. CIV. P. 25(d). Consequently, Rob Jeffreys, in his official capacity, is hereby substituted for John Baldwin as a Defendant in this case.

### B. Count 8 – Americans with Disabilities Act Claim

Count 8 is a failure to accommodate claim under the Americans with Disabilities Act against Defendant Jacqueline Lashbrook, in her individual capacity, and the IDOC Director, in his official capacity (Doc. 43).

In order to state a claim under Title II of the ADA, Plaintiff must allege that 1) she was a qualified individual with a disability; (2) she was excluded from or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination; and (3) the exclusion, denial of benefits, or discrimination was because of his disability. *E.g., Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) (citation omitted).

Defendants argue that Plaintiff failed to state a claim under the ADA because she did not allege a disability recognized by the ADA (Doc. 66, pp. 3–4). Defendants point

out that "gender identity disorders not resulting from physical impairments" are specifically exempt from the definition of disability (*Id.*). 29 U.S. C. § 705(20)(F). They assert in a conclusory fashion, without citing to any authority, that gender dysphoria, which is Plaintiff's diagnosis "for all practical purposes is equivalent to 'gender identity disorder'" because "gender identity is still at the crux of Plaintiff's diagnosis" (Doc. 66, p. 4). Defendants also argue that Plaintiff failed to sufficiently allege that she was discriminated against because of her gender dysphoria (*Id.* at pp. 4–5). Finally, Defendants argue that Warden Lashbrook is not a proper defendant for Plaintiff's ADA claim and must be dismissed (*Id.* at p. 5).

To begin with, Defendants' argument fails to recognize that Plaintiff's ADA claim is not based solely on her gender dysphoria. She alleges Defendants failed to provide her with reasonable accommodations for her gender dysphoria, as well as, her other mental disabilities, including bipolar disorder, depression, and schizophrenia (Doc. 43, p. 15).

As for Defendants' argument that gender dysphoria is excluded from the definition of disability under ADA, this issue is not nearly as straightforward as Defendants let on. *See, e.g.,* Kevin M. Barry, Jennifer L. Levi, *The Future of Disability Rights Protections for Transgender People*, 35 TOURO L. REV. 25 (2019). When the ADA was enacted over 30 years ago, "transvestism, transsexualism, . . . [and] gender identity disorders not resulting from physical impairments" were explicitly excluded from protection, "based on the moral opprobrium of several senior senators." *Id.*; 42 U.S.C. § 12211 (b)(1). These exclusions effectively prevented transgender litigants from challenging disability discrimination under federal law. 35 TOURO L. REV. 25, 42. But in 2013, the diagnosis of

"gender identity disorders" was removed from the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), and "gender dysphoria" was added. *Id.* at 44. Since then, transgender litigants have successfully argued in some instances that gender dysphoria is a protected disability under the ADA. *Id.*[2] Additionally, the Department of Justice under both the Obama and Trump Administrations interpreted the ADA to cover gender dysphoria. *Id.*, 47–48, 48–49. No federal court of appeals or the Supreme Court has interpreted the constitutionality of the ADA's transgender exclusion or addressed whether the exclusion applies to gender dysphoria.

Given the unsettled state of the law and Defendants' brief and bare-bones argument, the Court cannot say for certain that gender dysphoria falls within the ADA's exclusionary language.

The Court next finds that Plaintiff has adequately alleged that Defendants discriminated against her and failed to accommodate her gender dysphoria. Specifically, she alleged that she was assigned to a male prison and placed in a cell with straight or non-transgender inmates, which put her at risk for physical and sexual abuse (Doc. 43, p.

---

[2] *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123 (E.D. Pa. May 18, 2017) (holding that gender dysphoria is protected by the ADA); *Doe v. Massachusetts Dep't of Correction*, No. CV 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018) (holding that the ADA's transgender exclusion did not apply to gender dysphoria). *See also Iglesias v. True*, 403 F. Supp. 3d 680, 688 (S.D. Ill. 2019) (denying motion to dismiss based on ADA's transgender exclusion, noting the disagreement between courts as to whether the ADA's transgender exclusion applied to gender dysphoria); *Tate v. Wexford Health Sources, Inc., et al.*, SDIL Case No. 16-cv-92-NJR (allowing transgender inmate to proceed on claim under the ADA); *Hampton v. Baldwin, et al.*, SDIL Case No. 18-cv-550-NJR (allowing transgender inmate to proceed on claim under the ADA for declaratory and injunctive relief until she was released from prison, which rendered her claim moot). *But see Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753–54 (S.D. Ohio 2018) (holding that gender dysphoria "is expressly excluded from the definition of 'disability'" under the ADA and the Rehabilitation Act).

15). She also alleged that when she sought protection, she was placed in isolation and cut off from access to group therapy and educational programs, which only caused her mental health to deteriorate further (*Id.*). These allegations are sufficient to support an ADA claim.

Accordingly, Count 8 will proceed, but not against Warden Lashbrook. The ADA does not permit suit against IDOC employees in their individual capacity. *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 670, n.2 (7th Cir. 2012). The proper defendant is the IDOC itself, or its director in his or her official capacity (which is the same thing as a suit against the agency). *Id.* As such, Count 8 will proceed against the IDOC Director and is dismissed with prejudice as to Warden Lashbrook.

### C. Count 10 – *Monell* Claim

Count 10 is a claim brought under *Monell v. Dep't of Social Serv's of the City of New York,* 436 U.S. 658 (1978) against the IDOC Director, in his official capacity (Doc. 43). Defendants argue that the claim must be dismissed because a claim against the Director in his official capacity is the same as a claim against the IDOC, and the IDOC is protected from suit by sovereign immunity under the Eleventh Amendment (Doc. 66, pp. 10–11).

The Eleventh Amendment, generally speaking, bars private suits in federal court against a state for money damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Under the exception carved out in *Ex parte*

*Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 337; *Sorrentino v. Godinez*, 777 F.3d 410, 415 (7th Cir. 2015).

The *Ex parte Young* doctrine applies here. In Count 10, Plaintiff is suing the IDOC Director, in his official capacity, for ongoing constitutional violations, and Plaintiff is only seeking injunctive and declaratory relief (Doc. 43, ¶¶114–121). Consequently, this claim can go forward and the portion of the motion to dismiss regarding Count 10 is denied.

### D. Count 12 – Intentional Infliction of Emotional Distress

Count 12 is a tort claim for intentional infliction of emotional distress ("IIED") against the individual Defendants: Warden Lashbrook, Nurse Gregson, McCarthy, Lauer, Laser, Roskowski, Graves, Brumleve, and Goetz (Doc. 43). Defendants argue that Count 12 must be dismissed because it is barred by the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1 or, in the alternative, because Plaintiff failed to sufficiently allege the elements of an IIED claim (Doc. 66, pp. 6–9).

The Illinois State Lawsuit Immunity Act provides that the State of Illinois is immune from suit in federal court for state law claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (citing 745 ILL. COMP. STAT. 5/1). Rather, the Illinois Court of Claims has exclusive jurisdiction over state law tort claims against the state. *Richman*, 270 F.3d at 441 (citing 705 ILL. COMP. STAT. 505/8). State sovereign immunity also applies to claims against individual officers, even when they are sued in their individual capacities, when the action is "nominally one against the servants or agents of the State when the real claim

is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016). However, there is an important exception to state sovereign immunity and state officials are afforded no protection if the plaintiff alleges that they violated statutory or constitutional law. *Id.* at 658–59. "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Id.* at 659 (citation omitted).

Here, Plaintiff alleges that Defendants' conduct, which serves as the basis for his IIED claim, also violated the Eighth Amendment, and Defendant Goetz's conduct additionally violated the Illinois Hate Crime Act (*see* Doc. 43). Therefore, state sovereign immunity does not bar Plaintiff's IIED claim.[3] The motion to dismiss is denied in this regard.

As for Defendants' argument that Plaintiff failed to state a claim, they contend that the conduct alleged in the complaint is not sufficiently extreme or outrageous to support a claim for IIED (Doc. 66, pp. 8–9). Under Illinois law, intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct by the defendant; (2) either intent to cause distress or knowledge that there was a high probability that the

---

[3] *See Bentz v. Ghosh*, 718 Fed.Appx. 413, 419 (7th Cir. 2017) (holding state sovereign immunity did not bar state law claim for negligence where the plaintiff alleged the defendants' conduct also constituted deliberate indifference in violation of the Eighth Amendment); *Murphy*, 844 F.3d at 660 (holding state sovereign immunity did not bar state law claim for battery where the plaintiff also alleged and proved the defendants' conduct violated the Eighth Amendment prohibition on excessive force); *Whitlock v. Brueggemann*, 682 F.3d 567, 590 (7th Cir. 2012) (holding state sovereign immunity did not bar state law claims against Illinois State Police defendants where the plaintiff also alleged that the ISP defendants violated his constitutional rights).

defendant's conduct would cause severe emotional distress; and (3) severe emotional distress that actually resulted. *Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016). "The conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). "[T]he degree of power or authority which a defendant has over a plaintiff can impact . . . whether that defendant's conduct is outrageous. The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous . . . ." *Honaker v. Smith*, 256 F.3d 477, 490–91 (7th Cir. 2001) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Courts also consider "whether the defendant knew the plaintiff was particularly susceptible to emotional distress and acted inappropriately despite that knowledge" when determining whether conduct was extreme and outrageous. *Cairel v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016) (citing *Honaker*, 256 F.3d at 492).

Here, Defendants baldly assert, without any supporting citations, that their conduct was not extreme and outrageous (*see* Doc. 66, pp. 8–9). The Court, however, finds that the allegations in the complaint are sufficient to plead a claim of IIED and survive a motion to dismiss. Plaintiff is an inmate in the custody of and under the control of Defendants. She is a transgender woman imprisoned in a male facility and suffering from significant mental health issues. She alleged that she endured relentless jeers, insults, and threats from other inmates and correctional officers. She pleaded for protection and for mental health treatment but her requests fell on deaf ears. She was violently attacked by other inmates on at least two occasions. She attempted suicide twice. And she was given

a number of false disciplinary tickets and placed in segregation for significant amounts of time, which only exacerbated her emotional distress. The Court finds that Plaintiff's allegations regarding Defendants' conduct, in light of their position of power and Plaintiff's emotional susceptibility, are sufficient to survive a motion to dismiss. Perhaps after the facts are fully developed, there may not be enough to hold some or all of the Defendants liable for IIED at summary judgment. But in evaluating a mot to dismiss, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in the Plaintiff's favor. *E.g.*, *Burger*, 942 F.3d at 374. Given the facts, as pleaded by Plaintiff, the reasonable inferences that can be drawn from them, and Defendant's lack of any supporting authority for their arguments, Plaintiff will be allowed to proceed on the IIED claim and the motion to dismiss, as to this claim, will be denied.

## CONCLUSION

The Clerk of Court is **DIRECTED** to **SUBSTITUTE** Rob Jeffreys, in his official capacity, for John Baldwin as a Defendant in this case.

Defendants' motion to dismiss (Doc. 65) is **GRANTED in part and DENIED in part.** It is granted as to Defendant Jacqueline Lashbrook on Count 8 and denied in all other respects. Count 8 is dismissed with prejudice as to Lashbrook.

**IT IS SO ORDERED.**

**DATED: February 22, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
