IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KAABAR VENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18-CV-2185-MAB |
| | ) | |
| LEE GREGSON, BRADLEY LASER, | ) | |
| JACQUELINE LASHBROOK, | ) | |
| NATHAN MCCARTHY, | ) | |
| COREY LAUER, J. GOETZ, | ) | |
| DANIEL ROSKOWSKI, | ) | |
| ROB JEFFREYS, KEVIN GRAVES, and | ) | |
| KYLE BRUMLEVE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Kyle Brumleve, Kevin Graves, Lee Gregson, Joseph Goetz, Bradley Laser, Jacqueline Lashbrook, Corey Lauer, Nathan McCarthy, and Daniel Roskowski (Doc. 119). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Kaabar Venson is a transgender inmate of the Illinois Department of Corrections ("IDOC"), who filed this civil rights action regarding her incarceration at Menard Correctional Center (Doc. 8). Plaintiff filed her original complaint on December 19, 2018 (Doc. 1). The complaint was screened pursuant to 28 U.S.C. § 1915A and

dismissed for failure to state a claim, and Plaintiff was given leave to file an amended complaint (Doc. 7).

Plaintiff filed her first amended complaint on March 6, 2019 (Doc. 8). She was permitted to proceed on various Eighth Amendment claims for failure to protect and deliberate indifference regarding her requests for protective custody, an assault by other inmates that she sustained in May 2018, and her cell assignments (Doc. 11). Shortly after Defendants waived service of process, an attorney was recruited to represent Plaintiff (Docs. 22, 26; *see also* Dos. 18, 19). In October 2019, Plaintiffs' counsel sought leave to file a second amended complaint to reflect additional allegations regarding the existing claims, to add new claims related to her incarceration at Menard, and to add IDOC Director John Baldwin and four John Does as Defendants (Docs. 42, 43).[1] Plaintiffs' motion was granted and she filed her twelve-count second amended complaint on February 13, 2020 (Doc. 43). Following a round of motions to dismiss, Plaintiff is now proceeding on the following counts:

> **Count 1:** Eighth Amendment failure to protect claim against Defendants Laser, Lashbrook, Lauer, McCarthy, Roskowski, and the IDOC Director (in his official capacity only), for disregarding Plaintiff's requests for protection despite the substantial risk of harm Plaintiff faces from both prison staff and other prisoners as a transgender woman in a men's prison.

---

[1] The John Does were later identified as Daniel Roskowski (John Doe 1), Kevin Graves (John Doe 2), Kyle Brumleve (John Doe 3), and Joseph Goetz (John Doe 4) (Docs. 56, 72, 79). Furthermore, because John Baldwin was only named as a Defendant in his official capacity and was no longer the IDOC Director, the new acting IDOC Director, Rob Jeffreys, was substituted in as a Defendant in place of Baldwin pursuant to Federal Rule of Civil Procedure 25(d) (Doc. 71).

**Count 2:** Eighth Amendment failure to protect claim against Defendants Laser and Roskowski for failing to protect Plaintiff from an attack by other inmates that occurred on May 3, 2018.

**Count 3:** Eighth Amendment deliberate indifference claim against Nurse Gregson for failing to have Plaintiff examined by a doctor following the attack on May 3, 2018.

**Count 4:** Eighth Amendment claim deliberate indifference claim against Nurse Gregson for ignoring Plaintiff's request for mental health treatment following the attack on May 3, 2018.

**Count 5:** Eighth Amendment deliberate indifference claim against Defendants Graves and Brumleve for ignoring Plaintiff's request for medical treatment following her second suicide attempt.

**Count 6:** Eighth Amendment failure to protect claim against Defendant Goetz for failing to intervene as Plaintiff was beaten by other inmates on the yard on August 30, 2018.

**Count 7:** Eighth Amendment excessive force claim against Defendant Goetz for macing Plaintiff during the attack.

**Count 8:** Claim under the Americans with Disabilities Act against the IDOC Director in his official capacity for failing to accommodate Plaintiff's gender dysphoria and other mental illnesses.

**Count 9:** Eighth Amendment failure to protect claim against Defendants Laser, Lashbrook, Lauer, McCarthy, and Roskowski and for repeatedly placing Plaintiff in cells with straight or non-transgender inmates.

**Count 10:** *Monell* claim against the IDOC Director in his official capacity for unconstitutional policies, practices, and customs related to transgender prisoners.

**Count 11:** Claim under the Illinois Hate Crimes Act against Defendant Goetz for physically assaulting Plaintiff due to her gender and sexual orientation.

**Count 12:** Claim for intentional infliction of emotional distress against Defendants Brumleve, Goetz, Graves, Gregson, Laser, Lashbrook, Lauer, McCarthy, and Roskowski.

(Doc. 43, Doc. 126).

On October 19, 2020, the nine individual Defendants—Brumleve, Goetz, Graves, Gregson, Laser, Lashbrook, Lauer, McCarthy, and Roskowski—filed a motion for summary judgment, asserting that Counts 1, 2, 3, 4, 5, 6, 7, 9, 11, and 12 must be dismissed for failure to exhaust administrative remedies (Doc. 120, pp. 2, 10, 17).[2] After being given two extensions of time, Plaintiff filed her response in opposition to the motion for summary judgment on January 4, 2021 (Doc. 125). Defendants did not file a reply brief or otherwise address the additional facts asserted by Plaintiff or the evidence she submitted in support thereof. Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing was necessary.

## LEGAL STANDARDS

### Summary Judgment

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment.

---

[2] Defendants assert in the "Introduction" and "Conclusion" sections of their memorandum that they are seeking summary judgment on the issue of exhaustion as to Counts 1, 2, 5, 6, 7, 9, 11, and 12 (Doc. 120, pp. 2, 17). However, elsewhere in the body of their memorandum, Defendants indicate that Counts 3 and 4 should also be dismissed (*Id.* at p. 10). The Court will consider all of the Counts mentioned by Defendants.

*E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

## Exhaustion

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at

903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust her claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). Inmates must first submit a grievance to their counselor within 60 days after the discovery of the incident that gave rise to the grievance. *Id.* at § 504.810(a).[3] If the issue is not resolved to the inmate's satisfaction, the grievance must then be sent to the grievance officer, who submits a written recommendation to the warden. *Id.* at § 504.820(a), 504.830(e). The warden then issues a written decision on the grievance. *Id.* at § 504.830(e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an expedited basis. *Id.* On the other hand, if the warden determines that the grievance does not involve an emergency, the inmate is notified in writing that he or she "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its

---

[3] There are exceptions to this requirement, none of which apply here. *See* 20 ILL. ADMIN. CODE §§ 504.810(a), 504.870 (2017).

findings and recommendations to the Director, who then makes a final determination on the grievance. *Id.* at § 504.850(d), (e).

The regulations also require, in pertinent part, that the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c) (2017). If the offender does not know the names of the individuals involved, he must instead include as much descriptive information about the individual as possible. *Id.*

## FACTS

Prior to her incarceration at Menard, Plaintiff was housed at Stateville Correctional Center. She was transferred from Stateville and arrived at Menard on April 18, 2018 (Doc. 120, p. 3). Defendants assert there are three grievances pertaining to Plaintiff's incarceration at Menard: a grievance dated May 4, 2018 (#112-5-18), a grievance dated May 10, 2018 (#188-5-18), and a grievance dated June 4, 2018 (#168-6-18) (Doc. 120, pp. 3–4). Plaintiff, however, submitted proof of a fourth grievance, which was dated April 19, 2018 and submitted as an emergency (#333-4-18) (Doc. 125-1, pp. 9–11).[4] The grievances are discussed below in chronological order.

---

[4] Plaintiff also argued and submitted proof that she submitted additional grievances dated April 3, 6, and 20, 2018 (Doc. 125, pp. 2–3; Doc. 125-1, pp. 2–8, 12–15). A review of these grievances demonstrates that they pertain to events that occurred at Stateville (*see* Doc. 125-1, pp. 2–8, 12–15). But this case is based on Plaintiff's incarceration at Menard. Consequently, under normal circumstances, these grievances would be completely irrelevant to the question of whether Plaintiff exhausted her claims in this case. In this instance, however, the grievances are of some relevance because Plaintiff argues that, based on the continuing violation doctrine, they can be used to exhaust her claims in this case (*see* Doc. 125, pp. 14–16). The discussion of Plaintiff's argument in this Order does not require detailed information about these grievances and the Court thus declines to include it.

The first grievance was an emergency grievance dated April 19, 2018. Plaintiff wrote that she was informed by another inmate that "a guy named Low-Bo and the whole folks nation[5] wanted to kill [her]" (Doc. 125-1, pp. 9–11). She indicated that she had notified her counselor and Internal Affairs about the threat. She said she was scared for her life at Menard and asked to be transferred to a different facility. The warden deemed the grievance an emergency and it was processed on an expedited basis. On April 27th, the grievance officer issued her recommendation that the grievance be denied because Plaintiff was in a single cell in segregation at Menard until November 10, 2018. Plaintiff was told she could request protective custody or a transfer after she was released from segregation. The warden concurred and denied the grievance on May 4, 2018. Plaintiff appealed to the ARB, where the grievance was received on June 8, 2018. The ARB returned the grievance without addressing it, stating that "Requests do not go on a grievance form. Simply see appropriate staff for issues. No review. In seg. until Nov/2018." Defendants did not address this grievance in their opening memorandum (*see* Doc. 120). Rather, Plaintiff brought up this grievance in her response brief (*see* Doc. 125), but Defendants did not file a reply to address it or to modify their arguments to take this grievance into account.

_____

[5] Plaintiff indicates in her brief that the "Folk Nation" is an alliance of street gangs originating in Chicago (Doc. 125, p. 3 n.1). The Court presumes that Plaintiff was a former member of the Folk Nation based on her allegations in the second amended complaint that her former gang issued a "kill on sight" order for her (Doc. 43, pp. 9–10).

The May 4th grievance (#112-5-18) pertains to an attack Plaintiff suffered on May 3rd, her injuries, and the lack of medical care provided by the nurse (Doc. 120-1, pp. 1–5). Plaintiff stated that she was being escorted to the showers when another inmate reached through the bars of their cell and grabbed Plaintiff. The inmate banged Plaintiff's head on the cell bars repeatedly and punched her, while screaming "Ima kill this faggot. You thought it was a game!? We told you already what's going to happen, fag." Plaintiff indicated that she was scared for her life and had previously submitted a grievance about her fears. Plaintiff said her headaches had worsened since the attack and she had never seen a doctor. The nurse she saw after the attack only gave her Tylenol and said she was "good to go." Plaintiff asked to receive proper medical treatment, to press charges against the inmates who attacked her, and to get some grievance forms. A counselor received the grievance on May 11th but did not respond until May 31st, writing "medical report response attached." An attached memorandum from the health care unit indicated that Plaintiff's medical records were reviewed and a nurse went to the cell house on Mary 3rd to evaluate Plaintiff but Plaintiff refused treatment.

In the meantime, before the counselor responded to the May 4th grievance, Plaintiff submitted another grievance dated May 10, 2018 (#188-5-18) detailing the May 3rd incident, her injuries, and the lack of medical care provided by the nurse (Doc. 120-1, pp. 5–8). Plaintiff repeatedly said she was scared and indicated that she had notified "[Internal Affairs], counselor, [mental health providers], warden[—]everybody" that she was unsafe but they did not do anything to help her. She also stated that she was assigned to a new cell without a cellmate or a window and was feeling very depressed. Plaintiff

asked to receive proper medical treatment, to press charges against the inmates who attacked her, and to be transferred out of Menard because she was concerned the inmates who were housed there intended to kill her. A counselor received the grievance on May 15th and responded that day, indicating the grievance was a duplicate to #122-5-18 and Plaintiff's concerns "will be addressed on that grievance" (*Id.*).

Plaintiff evidently mailed both the May 4th and May 10th grievances directly to the Administrative Review Board, instead of the grievance officer, because there is a stamp on both grievances indicating they were received by the ARB on June 8, 2018 (Doc. 120-1, pp. 1–8; *see also* Doc. 120-2, p. 1). There is no indication what the ARB did with the grievances, but they were presumably returned to Plaintiff.

On June 4, 2018, Plaintiff authored another grievance (#168-6-18) in which she noted that the memo she received in response to her May 4th grievance said she had refused medical treatment after she was attacked, but Plaintiff complained that she never signed a refusal slip and her signature must have been forged (Doc. 120-1, pp. 9–12). She asked for the medical staff to be disciplined. She also asked for help in getting her other grievances from Stateville processed and for "the right medical attention." A counselor received the grievance on June 14th and responded the next day, noting this grievance was also a duplicate of the May 4th grievance and instructing "if you disagree [with] the grievance response[,] send the original to second level review to grievance office."

Plaintiff then sent all three grievances—the May 4th, May 10th, and June 4th—to the grievance officer at Menard, who received them on July 26 and July 27, 2018 (Doc. 120-1, pp. 3, 8, 11). Approximately two and a half months later, on October 11, 2018, the

grievance officer responded to all three grievances (*Id.*). The grievance officer recommended denying the May 4th grievance, stating the counselor addressed it appropriately and advising Plaintiff that she should follow the sick call procedure to get medical care, she should ask her gallery officer for grievance forms, and he can press charges against the inmates who attacked her through an attorney (Doc. 120-1, p. 3). The grievance officer also recommended denying the May 10th and June 4th grievances because they were duplicates of the May 4th grievance (Doc. 120-1, pp. 8, 11). The warden, Jacqueline Lashbrook, concurred with the recommendations and denied all three grievances on October 12th (*Id.*).

Plaintiff appealed all three grievances to the ARB (Doc. 120-1, pp. 5, 12). On October 30, 2018, the ARB returned the June 4th grievance without addressing it, stating it was "inappropriate to file a new grievance on a finalized grievance response"; instead Plaintiff should "just follow [Department Rule] 504F [and] submit [grievance] 112-5-18 if timely to do so." (*Id.* at p. 12). On November 19, 2018, the ARB likewise returned the two May grievances without addressing them because they were untimely as they were not sent to the grievance officer within 60 days of the incident (*Id.* at p. 5).

## DISCUSSION

The Court will first determine whether the grievances outlined above were fully exhausted before Plaintiff filed this lawsuit. Defendants make no argument that the April 19th emergency grievance and the June 4th grievance were not fully exhausted (*see* Doc. 120). The Court will therefore assume for purposes of this Order that these two grievances *were* fully exhausted.

That leaves the May 4th and May 10th grievances. Defendants argue these two grievances were not fully exhausted because the ARB declined to address them since they were submitted to the grievance officer more than 60 days after the attack (Doc. 120, p. 10). In response, Plaintiff cites to a case from this district that held when the grievance officer and warden accept an untimely grievance and address it on the merits, the ARB cannot then reject the grievance as being untimely filed with the grievance officer. *Kane v. Santos*, No. 17-CV-01054-NJR-RJD, 2020 WL 967878, at *4 (S.D. Ill. Feb. 28, 2020); *see also Spraggins v. Baker*, No. 13-3213, 2015 WL 558293, at *3 (C.D. Ill. Feb. 10, 2015); *Ford v. Wexford*, 2014 WL 685841 at *5 (S.D. Ill. Feb. 20, 2014). Defendants did not file a reply brief and thus provided no authority that runs contrary to the case cited by Plaintiff. Nor have Defendants advanced any argument as to why the Court should not follow that case. The Court declines to make the argument for Defendants. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) (citing *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."))).

Additionally, the decision in the case cited by Plaintiff makes sense. The regulations give facility officials discretion to consider untimely grievances. 20 Ill. Admin. Code § 504.810(a) (2017). If facility officials elect to address an untimely grievance on the merits and not reject it on timeliness grounds, then they have treated the grievance as properly filed.[6] Defendants cannot now assert that Plaintiff failed to exhaust the May

_____

[6] *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (analogizing exhausting administrative remedies to a collateral attack and explaining "if a state court accepts a belated filing, and considers it on the merits, that step makes the filing 'proper' for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."). *See also McDaniel v. Meisner*, 617 Fed. Appx. 553, 557 (7th Cir. 2015) ("We have

4th and May 10th grievances because the ARB rejected the grievances for being submitted to the grievance officer outside the 60-day timeframe set forth in the regulations.[7]

In sum, Defendants have failed to show that any of the relevant grievances were not fully exhausted. The Court will next evaluate whether the grievances are sufficient to cover Plaintiff's claims in Counts 1, 2, 3, 4, 5, 6, 7, 9, 11, and 12.

## A. Count 1

In Count 1, Plaintiff alleges that Defendants Laser, Lashbrook, Lauer, McCarthy, Roskowski, and the IDOC Director (in his official capacity) failed to protect her (Doc. 43, pp. 9–10). Specifically, she alleges that they knew other inmates wished to harm her due to her gender identity and the "kill on sight" order issued by her former gang, but they nevertheless failed to take sufficient measures to abate the risks she faced (*Id.*).

Plaintiff's fears about her safety were brought up in three of the four grievances discussed above. First, in the April 19th grievance—which Defendants did not

---

explained . . . that a defendant's failure to exhaust his administrative remedies is forgiven, *i.e.,* the exhaustion requirement is satisfied, if *prison officials* ignore a grievance's administrative failings and address its merits.") (emphasis added); *Conyers v. Abitz,* 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where *the institution* treats the filing as timely and resolves it on the merits.") (emphasis added); *Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").

[7] *See Kane,* 2020 WL 967878, at *4 ("[W]hen a grievance officer addresses the grievance based on the merits, rather than procedural grounds, the ARB cannot later examine the grievance based on procedural grounds and cure the error."); *Spraggins v. Baker,* Case No. 13-3213, 2015 WL 558293, at *3 (C.D. Ill. Feb. 10, 2015) (noting the regulations explicitly give the grievance officer discretion whether to decide an untimely filed grievance on the merits and defendants did not identify any rule or regulation that allows the ARB to overrule the grievance officer's discretionary decisions); *Ford v. Wexford,* Case No. 13-cv-43-JPG-DGW, 2014 WL 685841 at *5 (S.D. Ill. Feb. 20, 2014) (concluding the defendant could not assert the plaintiff failed to exhaust because the ARB rejected the grievance as untimely when the grievance officer had previously accepted the grievance and addressed it on the merits).

acknowledge—Plaintiff specifically indicated that the Folk Nation had issued a kill on sight order for her and she had notified her counselor and "IA," meaning Internal Affairs about the threat (Doc. 125-1, pp. 9–11; *see* Doc. 120). She said she was scared for her life at Menard and asked to be sent to a different facility (Doc. 125-1, pp. 9–11). Then, in the May 4th grievance, Plaintiff reiterated that inmates wanted to harm her, and she was scared for her life at Menard (Doc. 120-1, pp. 1–5). She also indicated that she had already written a previous grievance about the threats to her safety (*Id.*). Finally, in the May 10th grievance, Plaintiff repeatedly said that she feared for her life and had notified "IA, counselor, [mental health providers], warden[—]everybody" that she was unsafe, but they did nothing to help her (Doc. 120-1, pp. 5–8). She once again asked to be moved to a different facility or placed in protective custody (*Id.*).

In these grievances, Plaintiff specifically indicated that she notified the warden about her safety concerns. It is undisputed that the warden was Jacqueline Lashbrook (*see* Doc. 120-1, pp. 3, 8, 11; Doc. 125-1, pp. 9, 10). These grievances are thus sufficient to cover Defendant Lashbrook as to Count 1 and she is not entitled to summary judgment.

Plaintiff also specifically indicated that she notified Internal Affairs officers about her safety concerns. Plaintiff alleged in the second amended complaint that Defendants Lauer and McCarthy were Internal Affairs officers (Doc. 43, pp. 3, 4, 9, 15), and they do not dispute Plaintiff's assertions nor offer any evidence to the contrary (*see* Doc. 120). They also do not provide any argument or explanation as to why Plaintiff's reference to "IA" is insufficient to identify them (*see id.*). Consequently, the Court concludes they have

failed their burden to establish these grievances do not cover them and they are not entitled to summary judgment as to Count 1.

As for Defendants Laser and Roskowski, Plaintiff did not identify them by name in her grievances. And it does not appear that she identified them by title or position; Plaintiff made no indication or allegation that Laser and Roskowski are Internal Affairs officers, like she did with Lauer and McCarthy (*see* Doc. 43, Doc. 125). As best the Court can tell, Laser and Roskowski are correctional officers who are simply members of the security staff that do not have any specialized rank or role; they are the kind of officers that Plaintiff would have encountered on a routine, daily basis standing guard and doing rounds in the cellhouse, moving prisoners throughout the facility, etc. (*see* Doc. 120, p. 11). After much consideration, the Court does not believe that Plaintiff's grievances suffice to cover Officers Laser and Roskowski. There is nothing in the grievances that suggests Plaintiff told any officers in the cellhouses, let alone Laser and Roskowski specifically, about the threats to her safety or asked them to help her get transferred to a different facility or placed in protective custody. Defendants Laser and Roskowski are entitled to summary judgment on Count 1 and it will be dismissed as to them.

### B. Count 2

In Count 2, Plaintiff claims that Officers Laser and Roskowski failed to protect her from the inmate attack on May 3, 2018 (Doc. 43). Specifically, she alleges that Laser and Roskowski cuffed her behind her back to escort her to the shower and made her walk on the cell-side of the corridor within reach of other inmates (*Id.* at p. 6). An inmate nicknamed "Ra Ra" reached through the bars of his cell and grabbed Plaintiff by her hair

(*Id.*). Ra Ra and his cellmate, Mook, then repeatedly banged Plaintiff's head against the cell bars and punched and kicked her in the head, face, and neck, while Officers Laser and Roskowski made little or no attempt to stop the attack for almost 90 seconds (*Id.*).

Plaintiff talks about the attack in both the May 4th and May 10th grievances, but Defendants argue that the content of these grievances is not sufficient to cover Plaintiff's claim in Count 2 (Doc. 120, p. 12). The Court agrees. In both grievances, Plaintiff indicates that she was being escorted to the shower with her hands cuffed behind her back when an inmate reached through the bars of his cell and grabbed her (Doc. 120-1, pp. 1–2, 6–7). The inmate banged her head on the bars, punched her, and screamed at her while the correctional officers tried to get the inmate to let go of Plaintiff (*Id*). Plaintiff did not name either Officer Laser or Roskowski in the grievances (*see id*.). And, perhaps more importantly, she did not attribute any objectionable conduct to correctional officers (*see id*.). For example, there is no mention of correctional officers hesitating or failing to intervene to stop the attack (*see id.*) To the contrary, the only thing Plaintiff said in both grievances about the officers present during the attack was that they *did* try stop it (*Id.*). Plaintiff also did not ask for any kind of relief with respect to the officers present during the attack, such as some type of disciplinary action (*see id.*). There is simply nothing in the grievances that suggests Officers Laser and Roskowski acted inappropriately or were the targets of Plaintiff's complaints. The grievance responses by the facility officials also make clear that they did not perceive either grievance to contain any complaints about Officers Laser and Roskowski (*see id.* at pp. 1, 3, 4, 6, 8).

The Court concludes that the May 2018 grievances do not contain information

sufficient to put prison officials on notice of any issue with Officers Laser and Roskowski relating to the May 3rd attack. Consequently, these grievances cannot serve to exhaust as to Count 2 against these officers and they are entitled to summary judgment. Count 2 is dismissed without prejudice.

### C. Counts 3 and 4

In Counts 3 and 4, Plaintiff claims that Nurse Lee Gregson exhibited deliberate indifference when treating her following the May 3rd attack by Ra Ra and Mook. Defendants acknowledge that Plaintiff's grievances cover the subject of these claims but argue that the grievances are unexhausted (Doc. 120, pp. 8–10). The Court already determined otherwise. Accordingly, Nurse Gregson is not entitled to summary judgment as to Counts 3 and 4.

### D. Count 5

In Count 5, Plaintiff claims that Defendants Graves and Brumleve ignored her requests for medical treatment following her second suicide attempt (Doc. 43, pp. 12–13). Specifically, she claims that sometime after May 19, 2019, she attempted suicide for the second time by stabbing herself in the neck and cutting her arms with an earpiece that she broke off a pair of eyeglasses (*Id.* at p. 7). Plaintiff alleges that she begged Officers Graves and Brumleve for medical treatment for her injuries, but they ignored her and forced her to remain in her cell with the metal earpiece stuck inside her neck for a day and a half (*Id.* at p. 13).

The first three grievances (the April 19th, May 4th, and May 10th grievances) pre-date this incident and therefore cannot possibly exhaust as to this claim. The June 4th

grievance does not name Graves or Brumleve or complain that they failed to provide her with medical treatment following a suicide attempt. In fact, none of these grievances mention any suicide attempt at all. These grievances thus cannot serve to exhaust Plaintiff's claim in Count 5.

Plaintiff attempts to save this claim by invoking the continuing violation doctrine (Doc. 125, pp. 14–16). She suggests that correctional officers' deliberate indifference to her physical and mental wellbeing was an ongoing issue, and she argues that because she had already exhausted multiple grievances pertaining to particular instances of deliberate indifference, she was not required to file any more (*Id.*).

The Court, however, is unpersuaded by Plaintiff's argument and finds the continuing violation doctrine is not applicable in this instance. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing" so long as the first grievance gave the prison "notice of, and an opportunity to correct, [the] problem." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (parenthetical in original) (citations omitted). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.*

Here, three of the five previous grievances that Plaintiff cites to involve incidents that occurred when she was incarcerated at Stateville, *not* Menard (*see* Doc. 125, p. 14; Doc. 125-1, pp. 2–7, 12–15, 31–34). The incidents at Stateville occurred in early 2018—over a year prior to the 2019 incident at Menard, which is at issue in Count 5 (*see id.*). Furthermore, those grievances complain about discrete incidents of mistreatment by

guards at Stateville; they do not in any way suggest (either individually or collectively) that Plaintiff was subjected to a single course of mistreatment by guards that continued at every institution where she was housed (*see id.*). Consequently, the Court does not see how these grievances could possibly have put officials at Menard on notice that Plaintiff was allegedly being mistreated at their facility or given them any opportunity to investigate or correct the problem.[8] Furthermore, it is not unreasonable or unrealistic to require Plaintiff to submit separate grievances for incidents that occurred at separate facilities over a year apart and involved completely different individuals.[9] The Court thus concludes that Plaintiff's three grievances regarding events at Stateville cannot be used to exhaust her claim in Count 5.

The other two grievances Plaintiff cites to are the May 4th and May 10th grievances (Doc. 125, p. 14). The only alleged misconduct by correctional officers that Plaintiff complains of in those grievances is the failure of Internal Affairs officers to take any action

---

[8] In fact, Plaintiff did not cite to any case where a previously filed grievance was sufficient to exhaust future incidents that occurred at a different institution (*see* Doc. 125).

[9] *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (explaining that a violation is continuing "when it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct."). *See also Johnson v. Johnson*, 385 F.3d 503, 521 n.13 (5th Cir. 2004) ("[W]e do not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type. Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents . . . ."); *Howard v. Wade*, 534 F.3d 1227, 1244–45 (10th Cir. 2008) (holding plaintiff's earlier grievances regarding risks to his safety in one section of the prison were not sufficient to "put prison officials on notice" of intimidation that occurred in another part of the prison some months later); *Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *4 (S.D. Ill. Apr. 14, 2015) (plaintiff could not rely on previously filed grievance "to exhaust his claims for the denial of medical care that occurred at a wholly different location and involved completely different individuals operating under different circumstances.").

to transfer her out of Menard or put her in protective custody in light of threats and attacks from other inmates (*see* Doc. 120-1, pp. 1–5, 5–8). But Plaintiff never alleges that Officers Graves and Brumleve are Internal Affairs officers and there is no evidence or argument that suggests they are (*see* Doc. 43, Doc. 125). Furthermore, the grievances say nothing about cell house officers refusing to obtain medical treatment for Plaintiff following a suicide attempt. The continuing violation doctrine is inapplicable here because the type deliberate indifference allegedly exhibited by Defendants Graves and Brumleve—the failure to take Plaintiff for medical treatment—is of a different flavor and is factually distinct from the deliberate indifference Plaintiff complained about in her May 4th and 10th grievances—the failure to act on Plaintiff's request for a transfer or protective custody. The two situations cannot be lumped together as one continuing violation.[10] Consequently, the May 4th and 10th grievances cannot serve to exhaust Plaintiff's claim in Count 5 against Defendants Graves and Brumleve. Defendants are entitled to summary judgment and Count 5 is dismissed without prejudice.

### E.  Counts 6, 7, and 11

Plaintiff alleges that on August 30, 2018, she was attacked by four inmates on the yard (Doc. 43, pp. 7–8). She further alleges that during the attack, Defendant Goetz maced her, even though she was the victim, and did nothing else to stop the beating (*Id.*). She

---

[10] *See Moore v. Bennette*, 517 F.3d 717, 728–29 (4th Cir.2008) (finding no exhaustion where prisoner complained of inadequate medical care for Hepatitis C but not for gout) (cited by *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)); *Nance v. Wexford Health Sources, Inc.*, No. 16-CV-875-NJR, 2020 WL 607113, at *4 (S.D. Ill. Feb. 7, 2020) (facts regarding the diagnosis and treatment of Plaintiff's hepatitis B demonstrated "three distinct periods [that] do not constitute one continuing violation because they include different forms of deliberate indifference against different defendants.")

asserts a failure to protect claim against Goetz (Count 6), an excessive force claim (Count 7), and a claim under the Illinois Hate Crimes Act because she claims Goetz committed a hate crime when he physically assaulted her with the mace due to her gender and sexual orientation (Count 11) (Doc. 43, pp. 13–14, 17–18).

All of the relevant grievances (the April 19th, May 4th, May 10th, and June 4th, 2018 grievances) predate the incident at the heart of Counts 6, 7, and 11. Thus they could not possibly mention an attack on the yard or associated misconduct by a correctional officer. And, in fact, they do not. Plaintiff again attempted to save these claims by invoking the continuing violation doctrine, (Doc. 125, pp. 14–17), but her argument is unpersuasive for the same reasons explained with respect to Count 5. Namely, the previous grievances filed about officer misconduct at Stateville do nothing to give Menard officials notice of and an opportunity to correct problems at their own facility. And the grievances that pertain to Plaintiff's time at Menard do not contain any complaints about officers physically assaulting her or refusing to intervene and stop other inmates from attacking her. The Court thus concludes that Plaintiff failed to exhaust her administrative remedies with respect her claims in Counts 6, 7, and 11. Defendant Goetz is entitled to summary judgment and Counts 6, 7, and 11 are dismissed without prejudice.

### F. Count 9

In Count 9, Plaintiff alleges a failure to protect claim against Defendants Lashbrook, Laser, Lauer, McCarthy, and Roskowski based on her cell assignments. Specifically, she alleges she was repeatedly placed in cells with straight or non-transgender inmates because Defendants were either deliberately indifferent to the

substantial risk of harm that such placements posed to her or because Defendants were intentionally trying to harm her.

None of the relevant grievances (the April 19th, May 4th, May 10th, and June 4th, 2018 grievances) mention any complaints about Plaintiff's cell assignment or cellmate selection at Menard or contain any particular requests about who her cellmate should be. It is true that Plaintiff mentions issues with her cellmate(s) in at least one grievance that she filed regarding her time at Stateville (Doc. 125-1, pp. 36–37). However, as previously discussed with respect to Count 5, grievances filed about conditions at Stateville do nothing to give Menard officials notice of and an opportunity to correct problems at their own facility. In fact, it is not clear whether Plaintiff ever had a cellmate at Menard at any point before she filed the April 19th, May 4th, May 10th, and June 4th, 2018 grievances. The complaint does not contain any specific allegations of the sort (*see* Doc. 43). The grievance officer indicated in the response to Plaintiff's April 19th grievance that she was in a single cell and would continue to be until November 10, 2018, when she was scheduled to be released from segregation (Doc. 125-1, p. 10). And Plaintiff stated in the May 4th grievance that she did not have a cellmate (Doc. 120-1, p. 7).

The Court thus concludes that Plaintiff failed to exhaust his administrative remedies with respect to Count 9. Defendants Lashbrook, Laser, Lauer, McCarthy, and Roskowski are entitled to summary judgment and Count 9 is dismissed without prejudice.

### G. Count 12

Count 12 is Plaintiff's tort claim under Illinois state law for intentional infliction of emotional distress against Defendants Brumleve, Goetz, Graves, Gregson, Laser, Lashbrook, Lauer, McCarthy, and Roskowski (Doc. 43, p. 18). Defendants indicate in the "Introduction" and "Conclusion" sections of their memorandum that Count 12 should be dismissed (Doc. 120, pp. 2, 17), however, they never actually made any argument about Count 12 (*see* Doc. 120). At any rate, the PLRA's exhaustion requirement does not apply to state law tort claims. 42 U.S.C. § 1997e(a) (2013) ("No action shall be brought with respect to prison conditions *under section 1983 of this title, or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added); *McDaniel v. Meisner*, 617 Fed. Appx. 553, 556 n.3 (7th Cir. 2015) ("We note that the exhaustion requirements of the Prison Litigation Reform Act do not apply to state-law claims.") (citing 42 U.S.C. § 1997e(a)). Consequently, none of the Defendants are entitled to summary judgment on Count 12.

### CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Kyle Brumleve, Kevin Graves, Lee Gregson, Joseph Goetz, Bradley Laser, Jacqueline Lashbrook, Corey Lauer, Nathan McCarthy, and Daniel Roskowski (Doc. 119) is **GRANTED IN PART and DENIED IN PART.**

It is granted as to Defendants Laser and Roskowski on Count 1 and Count 2; Defendants Graves and Brumleve on Count 5; Defendant Goetz on Counts 6, 7, and 11;

and Defendants Lashbrook, Laser, Lauer, McCarthy, and Roskowski on Count 9. Accordingly, Count 1 is **DISMISSED without prejudice** as to Defendants Laser and Roskowski. Counts 2, 5, 6, 7, 9, and 11 are **DISMISSED without prejudice** in their entirety.

It is denied as to Defendants Lashbrook, Lauer, and McCarthy on Count 1; Defendant Gregson on Counts 3 and 4; and Defendants Brumleve, Goetz, Graves, Gregson, Laser, Lashbrook, Lauer, McCarthy, and Roskowski on Count 12.

This matter shall proceed on the following claims:

**Count 1:** Eighth Amendment failure to protect claim against Defendants Lashbrook, Lauer, McCarthy, and the IDOC Director in his official capacity, for disregarding Plaintiff's requests for protection despite the substantial risk of harm Plaintiff faces from both prison staff and other prisoners as a transgender woman in a men's prison;

**Count 3:** Eighth Amendment deliberate indifference claim against Nurse Gregson for failing to have Plaintiff examined by a doctor following the attack on May 3, 2018;

**Count 4:** Eighth Amendment claim deliberate indifference claim against Nurse Gregson for ignoring Plaintiff's request for mental health treatment following the attack on May 3, 2018;

**Count 8:** Claim under the Americans with Disabilities Act against the IDOC Director in his official capacity for failing to accommodate Plaintiff's gender dysphoria and other mental illnesses;

**Count 10:** *Monell* claim against the IDOC Director in his official capacity for unconstitutional policies, practices, and customs related to transgender prisoners; and

**Count 12:** Claim for intentional infliction of emotional distress against Defendants Brumleve, Goetz, Graves, Gregson, Laser, Lashbrook, Lauer, McCarthy, and Roskowski.

The stay on discovery as to the merits of Plaintiff's claims, (*see* Doc. 87), is **LIFTED**.

The parties may proceed with discovery. A new schedule with deadlines for discovery

and dispositive motions will be entered by separate order.


**IT IS SO ORDERED.**

**DATED: July 14, 2021**

s/ Mark A. Beatty
MARK A. BEATTY
**United States Magistrate Judge**